UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————

UNITED STATES OF AMERICA,

                              Plaintiff,

 v.

EDDIE A. JAMES,                                                      21-CR-141V

                              Defendant.

———————————————————

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo,  in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear

and report upon dispositive motions.


## PRELIMINARY STATEMENT


        The defendant, Eddie James ("the defendant"), is charged in a multiple

count indictment with having violated Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C),

856(a)(1) and Title 18 U.S.C. §§ 924(c)(1)(a) and 922(g)(1).  Dkt. #1.  He has filed a

motion seeking to suppress the use of physical evidence seized pursuant to a search

warrant.  Dkt. #51.  The defendant also made a supplemental request for a *Franks*[1]

hearing for purposes of contesting the legal validity of the search warrant issued by a

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

New York State Supreme Court justice on November 17, 2020.  Dkt. #68.  The

government has filed its opposition to the requests of the defendant.  Dkt. #s 60, 69.


## **FACTS**


Starting sometime in August of 2020, Officers Kevin Morse and Jonathan

Andres, as members of the Niagara County Drug Task Force, began an investigation of

the defendant pertaining to the illegal sale of cocaine and other controlled substances.

As part of that investigation, they made use of a confidential informant ("CI"), identified

as ML22, who advised them that he/she "could purchase crack cocaine from a black

male known to him/her as 'Doc'."  In their investigation, the officers determined the birth

date of the defendant and the location of his residence, to wit, Apartment #5, 119

Nichols Street, Lockport, New York, and that the defendant operated a red 2013 Ford

Fusion automobile bearing license registration number JES6264.  Their investigation

also indicated that the defendant stored and distributed quantities of controlled

substances from his apartment located at 119 Nichols Street, Lockport, New York.


During the first half of August 2020, arrangements were made by Officers

Morse and Andres with the CI whereby the CI agreed to establish a meeting with the

defendant for the purposes of purchasing controlled substances from the defendant in

exchange for funds supplied by the Drug Task Force.  The CI arranged a meeting with

the defendant, and upon the agreed date and time, he/she was driven by Officer Morse

to the agreed upon location.  On that date, the defendant was observed by law

enforcement officers to be operating a red Ford Fusion automobile with registration

license plates JES6264 a short time after the CI had been dropped off at the agreed

upon meeting location.  Shortly after that, the CI returned to the officers and turned over

controlled substances which after testing were found to be present with cocaine.

A second arrangement for the purchase of controlled substances by the CI

from the defendant was made in the first half of August 2020.  The CI was driven to the

agreed upon meeting place by Officer Morse, and shortly thereafter the defendant was

observed driving the red Ford Fusion vehicle with license plate JES6264.  The CI met

with the defendant and purchased a substance with Drug Task Force funds from the

defendant, which substance was later tested and determined to contain cocaine.

During the second half of October 2020, a third meeting between the CI

and the defendant was arranged for the purchase of controlled substances by the CI

from the defendant with the use of Drug Task Force funds.  Surveillance of the

defendant's apartment building at 119 Nichols Street, Lockport, New York was set up on

the date of the arranged meeting with the CI.  Drug Task Force Officer Douglas

observed the defendant leave the apartment building located at 119 Nichols Street and

operate the red 2013 Ford Fusion automobile bearing license plate JES6264 which the

defendant drove directly to the pre-arranged meeting place between the CI and the

defendant for the sale and purchase of controlled substances.  The CI met with the

defendant and an exchange of Drug Task Force funds and controlled substances was made between the CI and the defendant.  The purchased substance was later tested and it was determined to contain cocaine.  Upon completion of this transaction, Officer Douglas observed the red 2013 Ford Fusion bearing license plate JES6264 return to 119 Nichols Street, Lockport, New York and the defendant re-enter the building.

Sometime after the controlled purchases in August 2020 and before the application for a search warrant was made by Officers Morse and Andres on November 17, 2020 , the CI was shown an array of six photographs (Dkt. #68-1) of black men presumably for the purpose of having the CI identify the person from whom he/she made the drug purchase in August of 2020.  The CI picked out a photograph from the array that was not the defendant.  Photo number one was picked by the CI whereas the photo of the defendant was photo number five.  *See* Dkt. #68-1.  The government admits that this misidentification by the CI was not made known to Judge Kloch on November 17, 2020 when the application for the search warrant authorizing the search of the defendant's residence, automobile and person was made. *See* Dkt. #69, p. 2.  The government also admits that "the defendant has identified a misstatement in the warrant affidavit," *i.e.*, that "law enforcement observed someone matching the defendant's description leave his 'apartment' located at 119 Nichols Street, rather than his 'residence'."  *See* Dkt. #69, p. 5.

On November 17, 2020, Officers Morse and Andres, as well as the CI, appeared before the Hon. Richard C. Kloch, J.S.C. in Niagara County, New York and a search warrant application and affidavit signed and sworn to by Officers Morse and Andres was presented to the judge for his consideration. The application sought a search warrant authorizing the search of the defendant's residence at Apartment 5, 119 Nichols Street, Lockport, New York as well as his red 2013 Ford Fusion automobile bearing New York Registration JES6264 and the person of the defendant. Dkt. #62. An audio/video recording of the proceedings before Judge Kloch on November 17, 2020 was made wherein both officers and the CI were placed under oath and questioned by the judge in order for him to make a determination as to whether probable cause had been established for the issuance of the requested search warrant. After completing his examination of the three witnesses and verbally reviewing the search warrant application/affidavit, Judge Kloch issued the search warrant at issue. *See* Dkt. #62.

A search of the defendant's apartment at 119 Nichols Street, Lockport, New York was conducted on November 24, 2020, and a quantity of crack cocaine and marijuana and a shot gun and approximately $21,000 cash were found in the defendant's apartment and seized as evidence pursuant to the search warrant of November 17, 2020.

## DISCUSSION AND ANALYSIS

.               **A.  The November 17, 2020 Search Warrant**

The defendant argues that "no probable cause existed to search [the defendant's] home, as law enforcement lacked a sufficient nexus between criminal activity and his apartment" because "all three of the controlled buys occurred in the same public location, away from the home."  Dkt. #51, pp 6-7.  The defendant asserts that "there is no nexus between the alleged drug activity and [the defendant's] home" since "all three of the controlled buys occurred in the same public location, away from the home" and that "there are no observations of [the defendant] leaving or going back to his home during the first two controlled purchases."  Dkt. #51, p. 7, ¶ 15.  This argument is rejected by this Court.

The Fourth Amendment to the United States Constitution states that:

The right of the people to be secure in their persons, houses, papers, and affects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized.

"In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of circumstances' bearing upon its reliability." *United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993), *citing Illinois v. Gates*, 462 U.S. 213, 230-31 (1984) *and Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gate*s, 462 U.S. at 238. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Smith*, 9 F.3d at 1012. Thus, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39.

Officers Morse and Andres had been conducting a drug investigation of the defendant, and in their joint affidavit sworn to November 17, 2020 (Dkt. #62) they expressly stated that they "have determined that [the defendant] does sell, store and distribute quantities of crack cocaine and other controlled substances from [his] residence" located a 119 Nichols Street, Lockport, New York, Apartment #5.  Dkt. #62. They verified this address as being the residence of the defendant by reviewing records of the New York State Department of Motor Vehicles which also described the

registered vehicle that the defendant was operating, to wit, a 2013 red Ford Fusion, registration number JES6264.

For the two controlled purchases in August 2020 by the CI, the defendant was under surveillance and was observed by law enforcement officials driving his red 2013 Ford Fusion vehicle bearing plate identification JES6264 to the location that had been agreed upon for the drug exchange to take place, and as reported by the CI, an exchange of Drug Task Force funds for controlled substances was made between the CI and the defendant.  As to the October 2020 drug transaction between the defendant and the CI, Officer Douglas "observed a black male meeting the description of [the defendant] leave his apartment at 119 Nichols Street and operate NY registration JES6264, a red 2013 Ford Fusion" which he observed "drive directly to the location of ML22."  After the drug transaction between ML22 and the defendant was completed, Officer Douglas observed the red 2013 Ford Fusion vehicle with registration JES6264 return to 119 Nichols Street "and the black male re-enter the apartment."  Dkt. #62.

When reviewing these circumstances, including temporal proximity, in their totality, they must be considered from the perspective of a reasonable police officer in light of his training and experience.  *United States v. Moreno*, 897 F.2d 26, 31 (2d Cir.), *abrogated on other grounds by Horton v. California*, 496 128 (1990); *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).  The circumstances herein, in their totality, provided sufficient knowledge or reasonably trustworthy information to justify a

reasonable police officer in believing that the defendant was engaged in illegal drug activity and that his residence was being utilized as part of his criminal activity, *i.e.*, the storage of drugs and other contraband.  *United States v. Steppello*, 664 F.3d 359, 363-364 (2d Cir. 2011).  *See also United States v. Coleman*, 923 F.3d 450, 457-458 (6th Cir. 2019) (fair probability that evidence of drug trafficking will be found from home search existed because law enforcement conducted three controlled buys of cocaine from defendant and observed the defendant drive directly from residence to buy site).  Officers Morse and Andres presented these circumstances, and their belief based on same, under oath to Judge Kloch in support of their joint application for the search warrant authorizing a search of the defendant's residence at 119 Nichols Street, Lockport, New York.

The defendant also argues that there is a conflict or contradiction between the "Niagara County Drug Force Report of Purchase of Evidence (Dkt. #68-1, Exhibit B) and the joint affidavit of Officers Morse and Andres which "requires an opportunity for cross-examination by the defense" in a *Franks* hearing.  Dkt. #68, p. 4, ¶ 10.  More specifically, the defendant argues that in the Drug Task Force Report (Dkt. #68-1, Exhibit B), "Officer Morse noted that, prior to the controlled purchase, the subject 'left his *residence* at 119 Nichols Street'" and that in the search warrant affidavit, "Investigator Morse alleges that Investigator Douglas observed a black male 'leave his *apartment* located at 119 Nichols Street'."  As a result, the defendant argues that "the fact that Investigator Morse authored both of these documents, yet used the word

9

'apartment' rather than 'residence' in the search warrant affidavit submitted to Judge Kloch requires an opportunity for cross-examination by the defense."  Dkt. #68, p. 4, ¶ 10.  This argument lacks legal merit and certainly does not satisfy the strict requirements that must be met in order to require a *Franks* hearing.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence explained. . . .  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

*Franks v. Delaware*, 438 U.S. at 171-72.

Stated another way, to require a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the warrant affidavit contains a false statement, (2) the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth, and (3) the allegedly false statement was necessary for a finding of probable cause.  *United States v. Salameh*, 152 F.3d 88, 113

10

(2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Levasseur*, 816

F.2d 37, 43 (2d Cir. 1987), *cert. denied*, 507 U.S. 954 (1993);  *United States v. Longo*,

70 F. Supp.2d 225, 254 (W.D.N.Y.  1999).

> To suppress evidence obtained pursuant to an affidavit
> containing erroneous information, the defendant must show
> that: (1) the claimed inaccuracies or omissions are the result
> of the affiant's deliberate falsehood or reckless disregard for
> the truth; and (2) the alleged falsehoods or omissions were
> necessary to the [issuing] judge's probable cause finding.

*Canfield*, 212 F.3d at 717-18, citing *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir.

1998).

        If, after setting aside the allegedly misleading statements or omissions, the

affidavit nonetheless presents sufficient information to support a finding of probable

cause, the district court need not conduct a *Franks* hearing.  *Salameh,* 152 F.3d at 113;

*see also United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S.

841 (1985); *United States v. Longo,* 70 F. Supp.2d at 254.

        The interchangeable use of the words "apartment" and "residence" are

merely a colloquial use of common words to describe where a person resides and such

common use does not create a misrepresentation that would cause a reasonable

person such as a law enforcement officer or judge considering a search warrant

application to be deceived as to the location of the premises to be searched, *i.e.*,

Apartment 5, 119 Nichols Street, Lockport, New York.[2]  Even if it were determined that

the interchangeable use of the words "apartment" and "residence" created a mistake of

fact in the search warrant affidavit, such mistake can be deemed "reasonable" for

purposes of Fourth Amendment analysis.

> As the text indicates and we have repeatedly affirmed, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' "  *Riley v. California*, 573 U.S. 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).  We have recognized that searches and seizures based on mistakes of fact can be reasonable. The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. See *Illinois v. Rodriguez,* 497 U.S. 177, 183-186, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).  By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. See *Hill v. California,* 401 U.S. 797, 802-805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).  The limit is that "the mistakes must be those of reasonable men." *Brinegar, supra*, at 176, 69 S.Ct. 1302.

*Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014).

---

[2] This Court listened to and viewed the audio/video recording made by Judge Kloch when he examined Officers Morse and Andres and the CI under oath for purposes of determining probable cause.  During that colloquy, Judge Kloch reviewed photographs of the apartment house located at 119 Nichols Street, Lockport, New York and was made aware that the building housed five separate apartments, one of which, Apartment 5, was the defendant's residence.

The defendant also argues that there is some sort of discrepancy between the Drug Task Force Report (Dkt. #68-1, Exhibit B) and the joint affidavit in support of the search warrant application when he states:  "[N]otably absent from this [Drug Task Force] report is any suggestion that any member of law enforcement witnessed the driver of NY JES6264 return to 119 Nichols Street after the alleged controlled purchase" and "there is new and more specific language added to the search warrant affidavit submitted to Judge Kloch: 'Inv. Douglas observed JES6264 then return to 119 Nichols Street and the black male re-enter the apartment.'"  Dkt. #68, p. 4, ¶ 10.  This argument is also without legal merit.

It is clear from reading the Niagara County Drug Task Force Report of Purchase of Evidence (Dkt. #68-1, Exhibit B) that its primary purpose was to memorialize the actual "purchase of evidence that took place between the CI and the defendant on a specific date and time at a particular place and the results of what was purchased, *i.e.*, contraband.  The purpose of the joint affidavit of Officers Morse and Andres was specifically for the purpose of establishing probable cause for the issuance of a search warrant that would authorize the legal search of the defendant's residence or apartment at 119 Nichols Street, Lockport, New York.

**B.  The Defendant's Request for a Franks Hearing Based On The CI's Photo Misidentification**

It is not disputed that after the CI made the two controlled purchases of drugs in August 2020 from the person he/she referenced as being "Doc," whom officers Morse and Andres believed was a nickname used by the defendant, the CI was shown a photo array consisting of six (6) photographs of six individual black males numbered 1 through 6 and asked to identify the person he/she purchased the drugs from.  The CI chose photo number 1 as being the photograph of the person he/she knew as "Doc" and as the person he/she purchased drugs from on two occasions in August 2020.  This was a misidentification of the defendant by the CI.  Photo #1 was a photo of an individual named Travis L. Crowell.  The defendant was depicted in photo #5 of the photo array.  *See*  Dkt. #68-1, Defendant's Exhibit A.  However, if the photo array depicted in the "Niagara County Photographic Line-Up Admonition" containing the CI's signature is representative of what was actually presented to the CI for purposes of having him/her make a photo identification of "Doc" or the defendant as being the person from whom drugs were purchased in August 2020, it is understandable as to why a misidentification occurred since none of the photos in the array clearly depict the facial images of the males in that array.  Nevertheless, the Court will address this misidentification in the context of whether a *Franks* hearing is required.

The defendant argues that since Officers Morse and Andres, as well as the CI, failed to advise Judge Kloch of the misidentification of the defendant by the CI

when the application for the search warrant for the defendant's residence was made,

that constituted an "omission" that resulted in a concealment or failure to disclose

"concrete facts that would seriously undermine the confidential source's reliability."  Dkt.

#68, p. 1.  As a result, the defendant asserts that he is entitled to a *Franks* hearing.

It is true that Judge Kloch was not informed by Officers Morse and Andres

or the CI that the CI had misidentified the person as being the defendant who sold the

drugs to the CI in August 2020.  Nevertheless, it is the finding of this Court that the

"omission" does not require a *Franks* hearing for the reasons hereinafter stated.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence explained. . . .  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

*Franks v. Delaware*, 438 U.S. at 171-72.

15

Stated another way, to require a *Franks* hearing, a defendant must make a substantial preliminary showing that (1) the warrant affidavit contains a false statement, (2) the allegedly false statement was made knowingly and intentionally or with reckless disregard for the truth, and (3) the allegedly false statement was necessary for a finding of probable cause.  *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987), *cert. denied*, 507 U.S. 954 (1993);  *United States v. Longo*, 70 F. Supp.2d 225, 254 (W.D.N.Y.  1999).

> To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.

*Canfield*, 212 F.3d at 717-18, citing *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

If, after setting aside the allegedly misleading statements or omissions, the affidavit nonetheless presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing.  *Salameh,* 152 F.3d at 113; *see also United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir.), *cert. denied*, 474 U.S. 841 (1985); *United States v. Longo,* 70 F. Supp.2d at 254.

The defendant failed to put forth any evidence that the "omission" of the photo misidentification by the CI was intentional and material.  "A[n]  . . . omission is intentional when 'the claimed omission [is] the result of the affiant's deliberate falsehood or reckless disregard for the truth'."  An omission is "material when 'the alleged . . . omissions were necessary to the issuing judge's probable cause finding."  *United States v. Awadallah*, 349 F.3d 42, 64-65 (2d Cir. 2003).  There is no question that the CI chose the wrong photo from the photo array as being that of the defendant.  Once again, however, such choice appears to this Court as being a reasonable mistake based on the poor quality of the photographs used to make up the photo array shown to the CI.  *See* Dkt. #68-1, pp. 2 and 3.

The inclusion of the CI's photo identification mistake in the joint affidavit of Officers Morse and Andres and the sworn testimony given by the officers and the CI in their appearance before Judge Kloch when seeking the search warrant in question would not have vitiated the evidence that was submitted to Judge Kloch in support of establishing probable cause for the issuance of the search warrant.  The fact that the CI appeared in person before Judge Kloch and the police officers and testified under oath increased his/her reliability because he/she runs the greater risk that he/[she] may be held accountable if his/[her] information proves false."  *United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004), *quoting United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991); *United States v. Steppello*, 664 F.3d 359, 365 (2d Cir. 2011).  Judge Kloch expressly stated that he knew the CI from several prior occasions wherein the CI

17

provided information in applications for search warrants and that the information previously provided was "substantiated."  As a result, Judge Kloch stated that the CI provides a "large measure of credibility."

Judge Kloch also orally reviewed the contents of the joint affidavit submitted by Officers Morse and Andres for the record, and after doing so he asked the CI if the recitation as to the buys of drugs in August and October was true, *i.e.*, that the CI made these purchases of drugs from the person identified as James, a/k/a "Doc." The CI responded that such purchase were made by him/her.

Judge Kloch stated that the warrant application was "well documented" since it included lab reports indicating the presence of illicit drugs that were said to have been purchased by the CI from the defendant.  Photographs of the apartment building located at 119 Nichols Street, Lockport, New York were also provided to the judge and he was advised by the officers that this investigation established that the defendant resided in Apartment 5 at 119 Nichols Street, Lockport, New York.  The joint affidavit of Officers Morse and Andres clearly describes the observation of "a black male meeting the description of Eddie James leave his apartment located at 119 Nichols Street and operate NY registration JES6264, a red 2013 Ford Fusion" made by Investigator Douglas who "also observed the vehicle drive directly to the location of ML22." Investigator Douglas further observed ML22 "[meet] with Doc a short time later" and give "Doc $240 in drug task force funds in exchange for crack cocaine."  Upon

completion of this transaction, Investigator Douglas "observed JES6264 then return to 119 Nichols Street and the black male reenter the apartment." Dkt. #62. This transaction in October 2020 as described in the joint affidavit was sufficient to provide legal probable cause for the issuance of the search warrant for Apartment 5, 119 Nichols Street, Lockport, New York notwithstanding the misidentification of the defendant's photo in the photo array by the CI. As the United States Supreme Court has stated: "It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government – whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exemptions to the warrant requirement – is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez*, 497 U.S. 177, 185-186 (1990).

## CONCLUSION

Based on the foregoing, the defendant's request for a *Franks* hearing is denied, and it is recommended that the defendant's motion to suppress the use of evidence seized pursuant to the search warrant authorizing the search of Apartment 5, 119 Nichols Street, Lockport, New York be denied in all respects.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

19

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to**

**comply with the provisions of Rule 58.2, or with the similar provisions of**

**Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**


DATED:    Buffalo, New York
          September 5, 2023

                              *S/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

21